UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| AUTO CLUB INSURANCE ASSOCIATION, | Case No. 10-CV-4044 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| SENTRY INSURANCE, a Mutual Company, | |
| Defendant. | |

John R. Crawford and Mason M. Hill, JOHNSON & LINDBERG, P.A., for plaintiff.

Paula Weseman Theisen and Anthony J. Alt, MEAGHER & GEER, PLLP, for defendant.

In this case, two insurers — plaintiff Auto Club Insurance Association ("Auto Club") and defendant Sentry Insurance ("Sentry") — dispute whether Sentry is responsible for some of the attorney's fees and costs incurred in defending Jason McCann in an underlying personal-injury action. McCann was driving his personal automobile when he collided with another vehicle. The driver of the other vehicle sued McCann. McCann's automobile was insured by Auto Club, and Auto Club concedes that it was required to defend McCann in the underlying action. But Auto Club contends that, because McCann was driving his automobile in the course of his employment with Life Time Fitness ("Life Time"), Life Time's insurer — Sentry — is also responsible for some of the litigation expenses incurred in defending McCann. Sentry denies that it has any responsibility for those expenses.

The parties have cross-moved for summary judgment. For the reasons that follow, the Court denies Auto Club's motion and grants Sentry's.

I.  BACKGROUND

*A.  The Underlying Lawsuit*

McCann worked at Life Time's location in the Highland Park neighborhood of St. Paul, Minnesota.  His main responsibility was selling memberships to prospective Life Time members.  Shutt Dep. at 8.  He was paid primarily on commission.  McCann Dep. 9; Shutt Dep. 10.

McCann was asked by his manager, Earl Shutt, to work a shift at Life Time's booth at a special event held at the Minneapolis Convention Center in connection with the 2008 Republican National Convention.  McCann Dep. 10.  McCann testified at his deposition that, on the day of the event, he worked for about an hour at the Highland Park location and then drove to the Minneapolis Convention Center for his shift.  McCann Dep. 8, 47-49.

While en route to the Convention Center, McCann rear-ended a vehicle driven by Jeffrey Kreml.  Alt Aff. Ex. A.  Kreml sued McCann for injuries he sustained in the collision and named Life Time as an additional defendant.  Kreml alleged that McCann acted in the scope of his employment, and thus that Life Time was vicariously liable to Kreml.  *Id.*

Auto Club assumed McCann's defense.  On behalf of McCann, Auto Club also tendered defense of the action to Sentry.  Hill Aff. Ex. E.  In the underlying lawsuit, Life Time denied that it was vicariously liable for McCann's actions, and in responding to the tender of defense, Sentry denied that it was responsible for defending McCann.  Hill Aff. Exs. B, F.  The parties ultimately settled Kreml's claims, with Auto Club paying $100,000 (the limits of its policy) to settle Kreml's claims against McCann, and Sentry paying $125,000 to settle Kreml's claims against Life Time.  Hill Aff. Exs. G & H.

Before finalizing the settlement, McCann executed a loan-receipt agreement with Auto Club. In that agreement, Auto Club purported to loan McCann sufficient funds to cover the expenses that had been incurred in defending Kreml's lawsuit. Hill Aff. Ex. I. The agreement further provided that Auto Club would seek reimbursement of those expenses from Sentry. *Id*. Auto Club agreed that if it did not succeed in recovering any of the expenses from Sentry, Auto Club would forgive McCann's loan, and McCann would owe Auto Club nothing. *Id*.

Pursuant to the loan-receipt agreement, Auto Club brought this action against Sentry. Auto Club seeks to recover the bulk of the attorney's fees and costs that were incurred in defending McCann in the underlying action.

*B. The Coverage Dispute*

There is no dispute that McCann is covered under the Auto Club policy — the policy that McCann himself purchased to cover his personal vehicle. *See* Alt Aff. Ex. C at C1. The Auto Club policy contains a provision entitled "Other Insurance,"[1] which provides:

> If the car involved in a loss and described on the Declaration Certificate is also covered by other liability insurance, we will pay the ratio of our Limit of Liability to the total applicable Liability Limit.

Alt Aff. Ex. C at C6. The parties dispute whether McCann's car is, in fact, "covered by other liability insurance."

---

[1]This section heading, like certain other portions of the Auto Club and Sentry policies, appears in all upper-case letters. For legibility, the Court will use upper- and lower-case letters when quoting from the policies.

1. Auto Club's Position

As noted, the Sentry policy was purchased by Life Time, McCann's employer. The policy provides that Sentry "will pay all sums an 'insured' legally must pay" for covered bodily-injury damages. Alt Aff. Ex. K at K18. It further provides, in a section entitled "Other Insurance":

> For any covered "auto"[2] you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

Alt Aff. Ex. K at K31.

The Sentry policy further provides that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." Alt Aff. Ex. K at K16. Hence, the Sentry policy provides *primary* coverage only for vehicles that are owned by a "named insured" — and, at most, *excess* coverage for vehicles that are not owned by a "named insured."

Excess insurance will not do McCann — or, by extension, Auto Club — any good. The claims against McCann in the underlying lawsuit were settled for the limits of the Auto Club policy.[3] Sentry has no obligation to defend or indemnify McCann unless it provides *primary* insurance to him. And, as explained above, Sentry does not provide primary insurance to McCann unless McCann is a "named insured" under the policy. The critical question in this coverage action, then, is whether McCann is indeed a "named insured" under the Sentry policy.

---

[2]The Sentry policy defines "covered []auto[]" broadly to include just about *any* automobile. *See* Alt Aff. Ex. K at K9. There is no dispute that the vehicle owned by McCann is a "covered auto" under the Sentry policy.

[3]As noted, Sentry settled Kreml's claims against Life Time in the underlying suit for $125,000. Sentry has paid nothing with respect to Kreml's claims against McCann.

The Sentry policy contains an endorsement — an endorsement that, for the sake of brevity, the Court will refer to as the "controlled-entities endorsement" — that defines certain entities and persons as "named insureds." Specifically, the controlled-entities endorsement provides:

> The persons or organizations named below are named insureds under this policy[:]
>
> Life Time Fitness, Inc[.]
> Life Time Fitness, Inc[.] and its subsidiaries . . .
>
> and any other divisions, subsidiaries and persons and organizations under the control of the named insured, and any business entity incorporated or organized under the laws of the United States of America . . . while the organization named maintains, during the policy period, an ownership or majority interest in such entity. . . .

Alt Aff. Ex. K at K12. In the quotation above, the first ellipsis substitutes for a list of almost two dozen business entities that are defined as "named insureds." *Id*. No specific *individuals* are defined as "named insureds."

According to Auto Club, though, the controlled-entities endorsement defines McCann as a "named insured" because of the language that immediately follows the long list of business entities. Auto Club argues that, at the time of the collision, McCann was acting within the scope of his employment by Life Time. There is no dispute that Life Time is a "named insured." And thus, according to Auto Club, McCann is a "person[] . . . under the control of the named insured." That means that McCann himself was a "named insured" by virtue of the controlled-entities endorsement — and, for reasons explained above, that means that the Sentry policy extends primary coverage to McCann.

Because both Auto Club and Sentry provide primary coverage to McCann, Auto Club contends, Auto Club's other-insurance provision obligates Auto Club to pay only "the ratio of [its] Limit of Liability to the total applicable Liability Limit."  Alt Aff. C at C6.  Auto Club's liability limit is $100,000, and Sentry's liability limit is $1,000,000, for a total applicable liability limit of $1,100,000.  Thus, as Auto Club sees it, Auto Club is responsible for only 9% of the costs of defending McCann against Kreml's claims, and Sentry is responsible for the remaining 91%.

### 2. Sentry's Position

Sentry disputes Auto Club's reading of the controlled-entities endorsement.  According to Sentry, the controlled-entities endorsement applies only to *entities* that are controlled by Life Time — such as the two dozen entities specifically listed — and not to *employees*.  Sentry points out that two other policy provisions specifically address the coverage provided to *employees*.

The first such provision, which the Court will call the "who-is-an-insured provision," provides:

> 1. Who Is An Insured
>
>    The following are "insureds":
>
>    a. You [i.e., the named insured] for any covered "auto".
>
>    b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
>       . . .

> (2) Your "employee" if the covered "auto" is
> owned by that "employee" or a member of
> his or her household.
>
> . . .

Alt Aff. Ex. K at K19. When the who-is-an-insured provision is viewed in isolation, then, McCann is not even an "insured" — which, under the policy, is different from a "named insured" — because he was an employee and he owned the covered auto.

The second provision — an endorsement titled "Employees As Insureds" that the Court will call the "employees-as-insureds endorsement" — modifies the who-is-an-insured provision. The who-is-an-insured provision, in subsection (b), broadly grants coverage to anyone using, with permission, a car owned, hired, or borrowed by the "named insured." Then, in subsection (b)(2), that coverage is taken away from a small group of people: employees using cars that they (or their household members) own. Because an employee and the "named insured" are not likely to jointly own a car, the effect of subsection (b)(2) is to deprive an employee coverage when he is driving his own car, even if the car has been "borrowed" or "hired" by his employer (the "named insured").

But the employees-as-insureds endorsement grants back, in part, coverage that was taken away from employees in subsection (b)(2) of the who-is-an-insured provision. The employees-as-insureds endorsement provides in relevant part:

> Any "employee" of yours is an "insured" while using a covered
> "auto" you don't own, hire or borrow in your business or your
> personal affairs.

Alt Aff. Ex. K at K54.  Under the most natural reading of this endorsement, then, McCann is an "insured" — although not a "named insured" (at least, not by virtue of this endorsement) — if he was using his car in Life Time's "business or . . . personal affairs."

Sentry contends that these two provisions, read together, make clear the precise status of Life Time employees such as McCann:  When employees drive their own automobiles within the scope of their employment by Life Time, they are "insureds" who receive excess coverage under the Sentry policy, not "named insureds" who receive primary coverage under the Sentry policy.  (Of course — according to Sentry — when they drive their own automobiles outside the scope of their employment, they are neither "insureds" nor "named insureds" under the Sentry policy.)  And thus, Sentry argues, even if McCann acted within the scope of his employment when he rear-ended Kreml — an issue that Sentry disputes[4] — Sentry is not liable for any of the expenses incurred in defending the underlying action.

## II.  ANALYSIS

### A.  *Standard of Review and Applicable Law*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a

---

[4]Because the Court concludes that McCann was not a "named insured" under the Sentry policy, the Court need not decide whether McCann was acting within the scope of his employment.  Even if he was, he would be defined only as an "insured" under the Sentry policy, the Sentry policy would provide only excess coverage to him, and Sentry would have no responsibility to pay any of the defense costs incurred in the underlying action.

fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The parties agree that Minnesota law governs interpretation of the Sentry policy. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003) ("State law governs the interpretation of insurance policies."). Under Minnesota law, the interpretation of an insurance policy is a matter of law for the court. *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 688 (Minn. 1997).

Insurance policies are interpreted according to the same principles that govern the interpretation of contracts generally. *Progressive Specialty Ins. Co. v. Widness ex rel. Widness*, 635 N.W.2d 516, 518 (Minn. 2001); *Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn. 2000). Thus insurance policies must be interpreted to give effect to the parties' intent as expressed in the policy language. *Nathe Bros.*, 615 N.W.2d at 344; *Minn. Mining & Mfg. Co. v. The Travelers Indem. Co.*, 457 N.W.2d 175, 179 (Minn. 1990).

Further, insurance policies must be construed as a whole. *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994). All terms of an insurance policy must be given effect if possible. *Bobich v. Oja*, 104 N.W.2d 19, 24 (Minn. 1960); *Steele v. Great W. Cas. Co.*, 540 N.W.2d 886, 888 (Minn. Ct. App. 1995). As the Minnesota Supreme Court instructed in *Cement, Sand & Gravel Co. v. Agricultural Insurance Co. of Watertown, New York*:

> The intent of the contracting parties is to be ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the insurance contract as a whole.

30 N.W.2d 341, 345 (Minn. 1947); *see also Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979) (quoting *Cement, Sand & Gravel Co.*).

The meaning of policy language is assessed against an objective standard:  The court asks what a "reasonable person" in the insured's position would have understood the language to mean.  *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977); *Soo Line R.R. Co. v. Brown's Crew Car of Wyo.*, 694 N.W.2d 109, 113 (Minn. Ct. App. 2005).

Whether an insurance policy is ambiguous is a question of law for the court.  *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 34 (Minn. 1979); *Brault v. Acceptance Indem. Ins. Co.*, 538 N.W.2d 144, 147 (Minn. Ct. App. 1995).  Policy language is ambiguous if it can reasonably be interpreted in more than one way.  *Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co.*, 551 N.W.2d 224, 227 (Minn. 1996).  If the language of an insurance policy is clear, that language must be given its "usual and accepted meaning."  *Widness*, 635 N.W.2d at 518.  Ambiguous policy language will be construed against the insurer who drafted the policy.  *Widness*, 635 N.W.2d at 518.  Put another way, all reasonable doubts about policy interpretation will be resolved in favor of the policy holder.  *Brault*, 538 N.W.2d at 147.

### B.  The Sentry Policy

On an initial reading, Auto Club's interpretation of the controlled-entities endorsement is not implausible, and Sentry's is not without problems.  But "[w]hen a court attempts to identify who is insured under a policy, it must consider not only the language of the named-insured provision, but also what a reasonable person would have understood that language to mean in light of the surrounding . . . context."  *Land O' Lakes, Inc. v. Emp'rs Mut. Liab. Ins. Co. of Wisc.*, No. 09-CV-0693 (PJS/JSM), 2010 WL 5095658, *4, (D. Minn. Nov. 24, 2010).

Here, the question of what coverage is extended by the Sentry policy to Life Time employees is directly and specifically addressed by the employees-as-insureds endorsement. A reasonable person attempting to determine to what extent an employee of Life Time is covered under the Sentry policy would surely look to the endorsement entitled "Employees As Insureds." When an endorsement directly addresses the extent of coverage for Life Time employees acting within the scope of their employment — and when that endorsement unambiguously provides that such employees are "insureds" (and not "named insureds") — then it is very difficult to believe that the parties intended to define those same employees as "named insureds" under the (far more general) controlled-entities endorsement. *See Burgi v. Eckes*, 354 N.W.2d 514, 519 (Minn. Ct. App. 1984) ("[T]he specific in a writing governs over the general.").

And that raises the first major problem with Auto Club's reading of the controlled-entities endorsement: Reading that endorsement to define every Life Time employee acting within the scope of his employment as a "named insured" would render the employees-as-insureds endorsement superfluous. *See Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990) ("Because of the presumption that the parties intended the language used to have effect, we will attempt to avoid an interpretation of the contract that would render a provision meaningless.").

According to Auto Club, an employee engaged in Life Time's business is a "named insured" under the controlled-entities endorsement because he is a "person" under Life Time's control. But if this is correct, then the employee is also an "insured" under subsection (a) of the who-is-an-insured provision, which identifies "[y]ou" — the "named insured" — as an "insured."

If the employee is an "insured" under subsection (a) by virtue of being a "named insured," then the employees-as-insureds endorsement is superfluous. That endorsement provides coverage to employees acting "in your [e.g., Life Time's] business or your personal affairs." Life Time is a business entity — it does not *have* personal affairs. Thus, the employees-as-insureds endorsement addresses one situation and one situation only: an employee of Life Time using an automobile that Life Time does not own while furthering the interests of Life Time. But an employee in this same situation is, according to Auto Club, a "named insured" under the controlled-entities endorsement, and thus is *already* an "insured" under subsection (a) of the who-is-an-insured provision.

Auto Club tries to sidestep this problem through its proposed reading of the employees-as-insureds endorsement. According to Auto Club, the key sentence of the employees-as-insureds endorsement — which, again, reads "[a]ny 'employee' of yours is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs" — should be read so that the phrase "in your business or your personal affairs" modifies the phrase "own, hire or borrow" rather than the word "using." The Court finds Auto Club's proposed reading unreasonable.

To begin with, purely as a matter of ordinary English usage, it would be unusual to speak of "owning" something "in business or personal affairs." One might own something "in connection with" business or personal affairs, or "for" such affairs, but the phrase "own *in* your business or your personal affairs" is not idiomatic. By contrast, the phrase "us[e] . . . in your business or your personal affairs" is entirely idiomatic.

Further, the phrase "own, hire or borrow" appears twice in the relevant policy language, once in the who-is-an-insured provision, and a second time in the employees-as-insureds endorsement. Subsection (b) of the who-is-an-insured provisions applies to people "using with your [i.e., the "named insured's"] permission a covered 'auto' you own, hire or borrow . . . ." Alt Aff. Ex. K at K19. The employees-as-insureds endorsement applies to an employee "using a covered 'auto' you *don't* own, hire or borrow in your business or your personal affairs." Alt Aff. Ex. K at K54 (emphasis added). According to Auto Club's reading of the policy language, the policy contrasts two groups of autos: (1) *all* autos a "named insured" owns, hires, or borrows, and (2) only *some* autos a "named insured" does *not* own, hire, or borrow — namely, autos the "named insured" does not own, hire, or borrow for (or "in") its business or personal affairs. But when the who-is-an-insured provision and the employees-as-insureds endorsement are read together, it seems clear that the policy sets up a contrast between two mutually exclusive and collectively exhaustive sets of autos: (1) all autos a "named insured" *does* own, hire, or borrow, and (2) all autos a "named insured" *does not* own, hire, or borrow. Thus, the phrase "in your business or personal affairs" should be read to modify "using," not "own, hire or borrow."

Moreover, Auto Club's proposed interpretation would lead to an absurd result. Suppose a Life Time employee is on vacation in Disney World driving his family car. That car is, under Auto Club's reading of the employees-as-insureds endorsement, a car that Life Time "[does]n't own, hire or borrow in [its] business or [its] personal affairs." Thus, according to Auto Club, Life Time's vacationing employee would be an "insured" under the employees-as-insureds endorsement. The employee would not — even under Auto Club's reading of the policy — be a "named insured" because he would not be under Life Time's control while at Disney World, so

he would not be entitled to primary coverage. But he *would* — again, under Auto Club's reading of the policy — be entitled to excess coverage, because he would be an "insured" under the employees-as-insureds endorsement, driving a "covered 'auto' [Life Time] do[es]n't own" under the "Other Insurance" provision.

The Court has never heard of an employer providing, as a fringe benefit, excess auto-insurance coverage for its employees' private cars while those employees are on vacation or otherwise not doing the work of their employer. Indeed, Auto Club conceded at oral argument that it is extraordinarily unlikely that Life Time would purchase — or that Sentry would sell — excess insurance covering employees when they drive cars that have no connection to Life Time for reasons that have nothing to do with Life Time. Although Auto Club's interpretation of the Sentry policy is not wholly inconsistent with the policy's literal language, no reasonable person would read the policy to mean what Auto Club says it means.

Admittedly, Sentry's interpretation of its own policy is not without problems. What the Court has been referring to as the "controlled-entities endorsement" is, in fact, a "controlled-entities-and-persons endorsement." After all, it includes "persons . . . under the control of [Life Time]" within the definition of "named insureds." If (as Sentry insists) an employee is not such a "person," then who is? Sentry does not say. Indeed, Sentry simply ignores the controlled-entities endorsement's reference to "persons." It occurs to the Court that this phrase might include a sole proprietorship hired by Life Time to, say, seal a parking lot or repair a leaky faucet. But it is hard to know the purpose of this language.

Undoubtedly, this problem reflects the fact that the Sentry policy is a form policy, created by piecing together various paragraphs of boilerplate with little or no effort to customize the

boilerplate to the particular insured.  Such policies are ubiquitous, and in interpreting such policies, courts must use the same common sense that is used by the millions of people who buy and sell such policies.

Sentry's interpretation of its policy is not perfect, but it is reasonable — and it is infinitely more reasonable than Auto Club's interpretation.  Sentry's interpretation is internally consistent.  It gives the employees-as-insureds endorsement a purpose (to define when employees are "insureds").  It limits coverage under the Sentry policy to a type of coverage that a rational company would buy and a rational insurer would sell.  And, most importantly, it is how a reasonable person would understand the policy.  *See Am. Commerce Ins. Brokers*, 551 N.W.2d at 227 ("The language of an insurance policy will be held ambiguous *only* if it is *reasonably* subject to more than one interpretation.") (emphasis added).

For these reasons, the Court finds that, under the Sentry policy, an employee who uses his personal automobile while acting within the scope of his employment with Life Time is not a "named insured" entitled to primary coverage, but only an "insured" entitled to excess coverage.  And thus, even if McCann was acting within the scope of his employment with Life Time when he collided with Kreml, Sentry had no obligation to defend or indemnify McCann, because the lawsuit against McCann was settled within the limits of the Auto Club policy.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The summary-judgment motion of plaintiff Auto Club Insurance Association [Docket No. 34] is DENIED;

2. The summary-judgment motion of defendant Sentry Insurance [Docket No. 28] is GRANTED; and

3. Plaintiff's complaint is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 1, 2011                    s/Patrick J. Schiltz
                                         Patrick J. Schiltz
                                         United States District Judge